THE STATE EX REL. DOUGHTY v. WHEELING–
PITTSBURGH STEEL CORPORATION ET AL.

[Cite as State ex rel. Doughty v. Wheeling–Pittsburgh
Steel Corp. (1993), 67 Ohio St.3d 610.]

(No. 92–2463—Submitted September 14, 1993—Decided December 1, 1993.)

*Larrimer & Larrimer* and *Craig Aalyson,* for relator.

*Vorys, Sater, Seymour & Pease, Russell P. Herrold, Jr., Bradley K. Sinnott,* and *William C. Heer III,* for respondent Wheeling–Pittsburgh Steel Corporation.

*Lee I. Fisher,* Attorney General, and *Robert L. Solomon III,* Assistant Attorney General, for respondent Industrial Commission.

---

*Per Curiam.* Under former R.C. 4123.57, in effect at the time of claimant's injury, a claimant could choose the manner in which to receive permanent partial disability compensation—as impaired earning capacity compensation under R.C. 4123.57(A) or as permanent partial disability compensation under R.C. 4123.57(B). For "good cause shown," however, a claimant could switch the election. R.C. 4123.57(A). "Good cause" requires "(1) unforeseen changed circumstances subsequent to the initial election, and (2) actual impaired earning capacity." *State ex rel. Combs v. Goodyear Tire & Rubber Co.* (1992), 62 Ohio St.3d 378, 381, 582 N.E.2d 990, 992.

The first element, "unforeseen changed circumstances," is "deliberately flexible in order to accommodate the many possible situations that could merit a change of election." *State ex rel. Long v. Mihm* (1992), 64 Ohio St.3d 527, 529, 597 N.E.2d 134, 136. It, too, has two components, "with changed circumstances being a condition precedent to consideration of foreseeability." *Id.* To date, we have identified three examples of "changed circumstances" sufficient to trigger a foreseeability inquiry: (1) recognition of additional conditions after election (*Combs*); (2) significant worsening of claimant's condition (*State ex rel. Simpson v. Indus. Comm.* [1991], 62 Ohio St.3d 162, 580 N.E.2d 779); or (3) transformation of a nonwork-preventive injury into a work-prohibitive one (*Simpson*).

None of these prerequisites has been met in this case. Neither the status of claimant's allowed conditions nor his employment has changed since he made his election. As to the former, no post-election conditions have been recognized. As

to the latter, claimant's injury-related inability to perform his former duties predated his election. The district hearing officer specifically found that claimant's pre-election retirement was injury-influenced. Claimant, therefore, knew at that time that his earning capacity was likely impaired, but he chose R.C. 4123.57(B) benefits nonetheless.

We also do not find that claimant's increase in disability from twenty-one to thirty-nine percent, standing alone, demonstrates a "significant worsening" of claimant's condition. Our holding is supported by *Simpson, supra,* in which a twenty-percent increase in disability, in and of itself, did not justify an election change. To define "significant" in purely numerical terms is untenable because no two claimants, or the circumstances accompanying their change of election requests, are the same. A claimant with an already high percentage of disability may finally be forced from the work force by a small increase in disability. A different claimant, on the other hand, with a low percentage of disability may be virtually unaffected by such an increase. The significance of a disability increase, therefore, must be decided on a case-by-case basis, based on the totality of the attendant circumstances. In this case, absent nothing more than a sheer mathematical increase in percentage of disability, we decline to find that claimant has established that his condition has sufficiently changed so as to warrant further inquiry.

Claimant offers a fourth criterion, asserting that election without the benefit of an attorney constitutes "good cause." Claimant stresses that he had a non-attorney union representative when he made his election, and contends that *State ex rel. Nicodemus v. Indus. Comm.* (1983), 5 Ohio St.3d 58, 5 OBR 115, 448 N.E.2d 1360, supports his position. Claimant's reliance on *Nicodemus,* however, is misplaced.

*Nicodemus* involved an employer's right to belatedly appeal an order received by the employer's actuarial representative, but not by the employer itself. We upheld the employer's appeal rights, finding that the employer's non-attorney actuarial representative did not sufficiently understand the importance of the order so as to impute notice and waiver of appeal to the employer.

Contrary to claimant's representation, however, *Nicodemus* did not specify that *any* decision by a claimant made without attorney consultation is voidable. We note that Ohio Adm.Code 4121–2–01(A)(1) requires that *any* representative, attorney or otherwise, who practices before the commission "*shall* make himself competent to handle such matters by becoming familiar with the statutes, decisions of the courts, and rules of the bureau and industrial commission relating to workers' compensation." (Emphasis added.) Claimant has failed to demonstrate that his union representative lacked the requisite competency or was otherwise unqualified to represent claimant's interests. We, therefore, decline to

find that "good cause" for a change of election has arisen from claimant's representation by a non-attorney.

In conclusion, we find that claimant has failed to establish the "unforeseen changed circumstances" required of a finding of "good cause." Accordingly, the writ of mandamus is denied.

*Writ denied.*

MOYER, C.J., A.W. SWEENEY, WRIGHT, F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS and RESNICK, JJ., dissent.